MEEKER, SURVIVING PARTNER OF MEEKER & COMPANY, *v.* LEHIGH VALLEY RAILROAD COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 434.   Argued October 13, 14, 1914.—Decided February 23, 1915.

The limitations in Rev. Stat., § 1047, on suits for penalties accruing under the laws of the United States, relate to punitive penalties for infractions of public law and not to liabilities imposed for redressing a private injury even though the wrongful act be a public offense and punishable as such. It does not relate to a liability ac-

cruing under §§ 8, 9, 14 and 16 of the Act to Regulate Commerce which is not punitive but strictly remedial.

While Congress did not intend, in amending § 16 of the Act to Regulate Commerce by the act of July 29, 1906, to reserve claims already barred by local statutes, it did intend to take all other claims out of the operation of the varying state laws and subject them to limitations of its own creation operating alike in all the States.

The effect of the amendment to § 16 of the Act to Regulate Commerce by the act of July 29, 1906, was to extend the time for invoking action by the Commission upon complaints for damages to two years from the accrual of the claim, but until one year after the passage of the act as to all claims which had accrued before its passage.

The purpose of the joint resolution of June 30, 1906, postponing the effective date of the act of June 29, 1906, amending the Act to Regulate Commerce, was to cause the act to speak and operate at the end of the postponed period as if that were the time of its passage, and when the extended period expired it gave a full year for presenting accrued claims.

Objections to portions of the reports of the Interstate Commerce Commission awarding reparation for which the action is brought, on the ground that they contain statements which are not findings of fact, and not definitely identified in the record, are waived by failure to direct the court to the subject when charging the jury.

Under § 16 of the Act to Regulate Commerce, as amended by the act of June 29, 1906, the report of the Commission awarding reparation need not necessarily state the evidential facts, but must contain findings of the ultimate facts, and as so stated they are to be taken as *prima facie* true.

In this case *held* that the facts stated, although interwoven with other matter, and not expressed in terms generally employed by courts in special findings of fact, if taken as *prima facie* true, sustain an award against the carrier made by the Commission to shippers, as damages for unjust discrimination resulting from giving rebates to other shippers.

Where there are two reports of the Interstate Commerce Commission in the same proceeding and the later affirmatively shows that it was supplemental to the original report, they should be read together.

The measure of damages to a shipper is the pecuniary loss inflicted upon him as the result of giving rebates to other shippers and requiring him to pay the higher rate. Such loss must be proved in order to be recovered. Where the findings show that the amount awarded was the actual loss and recite that they are based on evi-

dence, it must be presumed, in the absence of the contrary being shown, that they are justified by the evidence.

A statute making findings and reparation order of a body, such as the Interstate Commerce Commission, *prima facie* evidence of facts therein stated, but only establishing, as in the case of § 16 of the Act to Regulate Commerce, a rebuttable presumption, cutting off no defense, and taking no question of fact from the court or the jury, is merely a rule of evidence and is not unconstitutional as abridging the right of trial by jury or denying due process of law.

*Quære,* whether the mere amount of an allowance for counsel fees under § 16 of the Act to Regulate Commerce, made by the court below, can be reëxamined in this court; but *held* that where the record shows that it was predicated upon a transcript of proceedings, and on statements in open court, and no evidence appears to have been offered or objections made by defendant as to amount, defendant cannot claim in this court that the allowance is excessive.

Although this court may not review the amount of such an allowance, it may determine whether as matter of law it is objectionable altogether.

Under §§ 8 and 16, of the Act to Regulate Commerce, the allowance for attorney's fee to be added as costs to the judgment recovered by a shipper on an unpaid award for reparation is for services of the attorney in the action on the award and not for services in the proceeding before the Commission, and such part of an allowance for attorney's fees as is specially given for services in that proceeding should be eliminated from the judgment.

211 Fed. Rep. 785, reversed.

THE facts, which involve the construction of §§ 1 and 2 of the Act to Regulate Commerce and questions of discrimination by the carrier against shippers of coal over its line, are stated in the opinion.

*Mr. John A. Garver* and *Mr. William A. Glasgow, Jr.,* for petitioner.

*Mr. John G. Johnson,* with whom *Mr. Edgar H. Boles, Mr. Frank H. Platt* and *Mr. George W. Field* were on the brief, for respondent:

Plaintiff has failed to prove by competent evidence that

the railroad violated the Commerce Act.  Plaintiff relied for his proof, upon the reports and orders of the Commission.  These do not prove that Meeker and Company were discriminated against; and do not prove that unlawful rates were charged.

Plaintiff has failed to prove by competent evidence that petitioner sustained damage.  The measure of damages, if any, should be the loss to petitioner as the result of the alleged discrimination or the alleged unreasonable rate. It does not follow from the conclusion of the Commission that an established rate is unreasonable in so far as it exceeds a stated amount, that a shipper who paid the established rate has been damaged, or that his damage, if any, should be measured by the difference between the two amounts.

The Commission's opinions contain statements, arguments and conclusions which the act does not purport to make admissible as *prima facie* evidence in a suit for damages.  In admitting the reports in evidence the trial court prejudiced the rights of defendant, making it thereafter impossible for the defendant to place before the jury its side of the case unembarrassed by the incompetent and misleading statements in the opinions.

Section 16 of the Act to Regulate Commerce is unconstitutional in so far as it deprives the defendant in a damage suit of a fair trial by jury.

The complaint in the proceeding before the Commission was filed July 17, 1907, at a time when the right of the Commission to pass upon the discrimination claims and the greater part of the excessive charge claims had expired by limitation.

The Commission had no jurisdiction over any claims accrued prior to July 17, 1905.

On July 17, 1907, when the complaint was filed before the Commission all claims accruing prior to July 17, 1902, had been outlawed by § 1047, Rev. Stat.

On September 3, 1912, when an action was commenced the plaintiff was barred by limitation from bringing an action upon any of his claims.

The allowances for counsel fees are invalid and excessive.

In support of these contentions, see *Atchison, T. & S. F.* v. *Int. Com. Comm.*, 188 Fed. Rep. 229; *Atchison, T. & S. F.* v. *Matthews*, 174 U. S. 96; *Baer Bros.* v. *Denver & R. G. R. R.*, 200 Fed. Rep. 614, 233 U. S. 479; *Balt. & Oh. R. R.* v. *Pitcairn Coal Co.*, 215 U. S. 481; *Blake* v. *National Banks*, 23 Wall. 307; *Carter* v. *N. O. & N. E. R. R.*, 143 Fed. Rep. 90; *Cattle Raisers' Assn*. v. *Ft. Worth & D. C. Ry.*, 7 I. C. C. 513; *Holy Trinity Church* v. *United States*, 143 U. S. 457; *Chicago, B. & Q. R. R.* v. *Feintuch*, 191 Fed. Rep. 482; *Cin., & Tex. Pac. Ry.* v. *Int. Com. Comm.*, 162 U. S. 184; *Coggell* v. *Lawrence*, 6 Fed. Cases, 2957; *Councill* v. *R. R.*, 1 I. C. C. 339; *Darnell Lumber Co.* v. *Sou. Pac. Co.*, 190 Fed. Rep. 659; *Dickerson* v. *Louis. & Nash. R. R.*, 15 I. C. C. 170, 191 Fed. Rep. 705; *Equitable Life Ass'n* v. *Hughes*, 125 N. Y. 106; *Farmers' Warehouse Co.* v. *Louis. & Nash. R. R.*, 12 I. C. C. 457; *Goff-Kirby Coal Co.* v. *Railroad*, 13 I. C. C. 383; *Gulf, Col. & S. F. Ry.* v. *Ellis*, 165 U. S. 150; *Heck* v. *Railroad*, 1 I. C. C. 495; *Int. Com. Comm.* v. *C. P. & V. R. R.*, 124 Fed. Rep. 624; *Int. Com. Comm.* v. *Louis. & Nash. R. R.*, 73 Fed. Rep. 409, 227 U. S. 88; *Int. Com. Comm.* v. *Un. Pac. R. R.*, 222 U. S. 541; *Jacoby* v. *Penna. R. R.*, 200 Fed. Rep. 989; *Kile & Morgan* v. *Railway Co.*, 15 I. C. C. 235; *Ky. & Ind. Bridge Co.* v. *Louis. & Nash. R. R.*, 37 Fed. Rep. 567; *Lehigh Valley R. R.* v. *Clark*, 207 Fed. Rep. 717; *Macloon* v. *Railroad*, 5 I. C. C. 84; *Maryland* v. *Balt. & Ohio R. R.*, 3 How. 534; *McClaine* v. *Rankin*, 179 U. S. 158; *Mitchell Coal Co.* v. *Penna. R. R.*, 230 U. S. 247; *Morrisdale Coal Co.* v. *Penna. R. R.*, 183 Fed. Rep. 929; *S. C.*, 230 U. S. 304; *Mo. & Kan. Shippers' Assn.* v. *R. R.*, 13 I. C. C. 411; *Nicola* v. *Louis. & Nash. R. R.*, 14 I. C. C. 199; *Norris* v. *Crocker*, 13 How. 429; *Parsons* v. *Bedford*, 3 Peters, 433; *Parsons*

v. *Chic. & N. W. Ry.*, 167 U. S. 447; *Penn. R. R.* v. *International Coal Co.*, 230 U. S. 184; *Rawson* v. *R. R.*, 3 I. C. C. 266; *Riddle* v. *Railroad*, 1 I. C. C. 594; *Robinson* v. *Balt. & Ohio R. R.*, 222 U. S. 506; *Russe* v. *Int. Com. Comm.*, 193 Fed. Rep. 678; *Seaboard Air Line* v. *Seegers*, 207 U. S. 73; *Southern Ry.* v. *St. Louis Hay Co.*, 153 Fed. Rep. 728; *Tex. & Pac. Ry.* v. *Abilene Cotton Co.*, 204 U. S. 426; *United States* v. *Del. & Hud. Co.*, 213 U. S. 366; *United States* v. *Standard Oil Co.*, 148 Fed. Rep. 719; *Walker* v. *Sou. Pac. Co.*, 165 U. S. 593; *Western N. Y. & P. Ry.* v. *Penn. Refining Co.*, 137 Fed. Rep. 343; *Woodward* v. *R. R.*, 17 I. C. C. 9; 1 Bouvier's Law Dict., p. 370; Drinker on Interstate Commerce; Judson on Interstate Commerce; 2 Stewart's Purdon's Digest, 13th ed., p. 2282; Rev. Stat., § 1047.

By leave of court, *Mr. Joseph W. Folk* and *Mr. Charles W. Needham* filed a brief in behalf of the Interstate Commerce Commission.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was an action under § 16 of the Act to Regulate Commerce [1] to recover from the Lehigh Valley Railroad Company damages alleged to have been sustained by a shipper and awarded by the Interstate Commerce Commission by reason of the company's violation of the prohibition in §§ 1 and 2 of that act against unreasonable rates and unjust discrimination. The plaintiff prevailed in the District Court, but the Circuit Court of Appeals reversed the judgment, 211 Fed. Rep. 785, and a writ of

---

[1] See act February 4, 1887, c. 104, 24 Stat. 379, and amendments of March 2, 1889, c. 382, 25 Stat. 855; February 10, 1891, c. 128, 26 Stat. 743; February 8, 1895, c. 61, 28 Stat. 643; June 29, 1906, c. 3591, 34 Stat. 584; and June 30, 1906, 34 Stat. 838, Joint Resolution No. 47.

certiorari granted under § 262 of the Judicial Code brings the case here. 234 U. S. 749.

The plaintiff was the surviving member of Meeker & Company, a copartnership, and sued in that capacity. This firm was engaged in the anthracite coal trade in New York City and was accustomed to purchase its coal at collieries in Pennsylvania and to ship it over the defendant's railroad to tidewater at Perth Amboy, New Jersey, and thence by vessel to New York. Two distinct claims were involved. The first covered shipments from November 1, 1900, to August 1, 1901, and was grounded upon a charge that the railroad company had unjustly and injuriously discriminated against Meeker & Company by giving (on August 1, 1901) to another and extensive shipper of anthracite between the same points an indirect but substantial rebate upon all shipments during the same period, and that by reason of this rebate the other shipper had obtained a contemporaneous service in all respects like that rendered for Meeker & Company at a less rate than was exacted from the latter. The second covered shipments from August 1, 1901, to July 17, 1907, and was based upon the charge that the established rate paid by Meeker & Company during that period was excessive and unreasonable.

On July 17, 1907, a complaint embodying both claims was presented to the Interstate Commerce Commission under §§ 9 and 13 of the act, and after a full hearing in which the railroad company was an active participant, the Commission made a written report (21 I. C. C. 129) finding that the charge of unjust discrimination was sustained by the evidence, condemning as excessive and unreasonable the rate which was in effect from August 1, 1901, to the date of the report, naming what was deemed a maximum reasonable rate, holding that the claimant was entitled to an award of reparation upon both claims, and directing that further proceedings be had to determine the

amount to be awarded. Under § 15 of the act an order was then made requiring the railroad company within a time named to cease giving effect to the prior rate found unreasonable and to establish a new rate not exceeding that found reasonable.

Thereafter a further hearing was had at which additional evidence bearing upon the question of reparation was presented, and, on May 7, 1912, the Commission made a supplemental report, saying (23 I. C. C. 480):

"In our original report we found that the rates charged complainant for the transportation of anthracite coal from the Wyoming coal region in Pennsylvania to Perth Amboy, N. J., during the period from November 1, 1900, to August 1, 1901, were unjustly discriminatory in violation of § 2 of the act to the extent that they exceeded the rates contemporaneously charged the Lehigh Valley Coal Company under the contract then in effect between that company and defendant; and we further found that the rates in effect from August 1, 1901, to July 17, 1907, were unreasonable to the extent that they exceeded rates of $1.40 per gross ton on prepared sizes, $1.30 on pea, and $1.15 on buckwheat.

"On basis of our conclusions in the former report, and upon consideration of the evidence adduced at the hearing upon the question of reparation, we now find that during the period from November 1, 1900, to August 1, 1901, complainant shipped from the Wyoming coal region of Pennsylvania to Perth Amboy, N. J., 55,257.75 tons of coal of prepared sizes, 16,689.76 tons of pea coal, 11,448.93 tons of buckwheat coal, and 4,926.77 tons of rice coal, and paid charges thereon, amounting to $129,989.18, at the rates found to have been unjustly discriminatory; that complainant has been damaged to the extent of the difference between the amount which he did pay and $118,979.85, the amount which he would have paid had he been given the benefit of the rates applied by defendant to similar ship-

ments of the Lehigh Valley Coal Company; and that he is, therefore, entitled to an award of reparation in the sum of $11,009.33, with interest thereon from August 1, 1901. We find further that from August 1, 1901, to July 17, 1907, complainant shipped from the Wyoming coal region in Pennsylvania to Perth Amboy, N. J., 246,870.15 tons of coal of prepared sizes, 106,051.09 tons of pea coal, and 87,250 tons of buckwheat coal, and paid charges thereon amounting to $685,375.27, at the rates found to have been unreasonable; that complainant has been damaged to the extent of the difference between the amount which he did pay and $626,945.62, the amount which he would have paid at the rates found reasonable, less $193.20 deducted by stipulation of all parties on account of certain claims already paid; and that he is, therefore, entitled to an additional award of reparation in the sum of $58,236.45, with interest, amounting to $27,750.64, on the individual charges comprising said sum from the dates of payment thereof to September 1, 1911, together with interest on said sum of $58,236.45 from September 1, 1911.

\*     \*     \*     \*     \*     \*     \*     \*

"The exhibits showing details respecting the shipments upon which reparation is asked are too extensive to be set forth in this report. But inasmuch as the accuracy of the figures in said exhibits respecting the shipments made, freight charges paid, and reparation due, is conceded of record by defendant, we deem it unnecessary to make detailed findings respecting the numerous shipments involved."

Thereupon the Commission made and entered of record an order for reparation which, with a slight amendment made June 15, 1912, was as follows:

"This case being at issue upon complaint and answers on file, and having been duly heard and submitted by the parties, and full investigation of the matters and

things involved having been had, and the Commission having, on the date hereof, made and filed a supplemental report containing its findings of fact and conclusions thereon, which said report is hereby referred to and made a part hereof:

"It is Ordered, That defendant Lehigh Valley Railroad Company be and it is hereby authorized and required to pay unto complainant, Henry E. Meeker, surviving partner of Henry E. Meeker and Caroline H. Meeker, co-partners, trading as Meeker & Company, on or before the 1st day of August, 1912, the sum of $11,009.33, with interest thereon, at the rate of 6 per cent. per annum, from the 1st day of August, 1901, as reparation for unjustly discriminatory rates charged for the transportation of anthracite coal from the Wyoming coal region in Pennsylvania to Perth Amboy, N. J., which rates so charged have been found by this Commission to have been unjustly discriminatory, as more fully and at large appears in and by said report of the Commission.

"It is Further Ordered, That defendant Lehigh Valley Railroad Company be and it is hereby authorized and required to pay unto complainant, Henry E. Meeker, surviving partner of Henry E. Meeker and Caroline H. Meeker, co-partners, trading as Meeker & Company, on or before the 1st day of August, 1912, the sum of $58,236.45, with interest thereon at the rate of 6 per cent. per annum, amounting to $27,750.64, upon the various individual charges comprising said sum, from the dates of payment thereof to September 1, 1911, as itemized in complainant's Exhibit 2, together with interest at the rate of 6 per cent. per annum on said sum of $58,236.45, from September 1, 1911, as reparation for unreasonable rates charged for the transportation of various shipments of anthracite coal from the Wyoming coal region in Pennsylvania to Perth Amboy, N. J., which rates so charged have been found by this Commis-

sion to have been unreasonable, as more fully and at large appears in and by said report of the Commission."

Although duly served with a copy of this order, the railroad company refused to comply with it; and, on September 3, 1912, after the time allotted for compliance had expired, the plaintiff, conformably to § 16 of the act, filed in the District Court his petition setting forth briefly the causes for which he claimed damages and the reports and orders of the Commission, and praying judgment against the railroad company for the amounts claimed and awarded and for interest and costs, including a reasonable attorney's fee. The defendant answered denying the claims set forth in the petition and asserting that they were barred by the applicable statute of limitations; that the Commission was without jurisdiction "to make the findings and order of reparation" relied upon, and that "there was before the Commission no substantial evidence to sustain said findings and said order." A trial resulted in a verdict for the plaintiff assessing the damages at $109,280.17, the total amount awarded by the Commission with interest, and judgment was entered for this sum with costs, including an attorney's fee.

At the trial the plaintiff produced no evidence tending to show unjust discrimination, exaction of unreasonable rates, injury to Meeker & Company or what damages were sustained by them, other than the evidence afforded by the reports and orders of the Commission; and the defendant produced no evidence whatever, save some computations intended to be helpful in determining how much of the claims was barred according to each of several views advanced respecting the applicable statute of limitations.

Whether the claims were barred in whole or in part by some applicable statute is one of the questions which the record presents, and to dispose of it we must notice three statutes upon which the defendant relies.

One of these is Rev. Stat., § 1047, which places a limitation of five years upon any "suit or prosecution for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States." The words "penalty or forfeiture" in this section refer to something imposed in a punitive way for an infraction of a public law, and do not include a liability imposed for the purpose of redressing a private injury, even though the wrongful act be a public offense and punishable as such. Here the liability sought to be enforced was not punitive but strictly remedial, as is shown by §§ 8, 9, 14 and 16 of the Act to Regulate Commerce. So § 1047 was not applicable. *Chattanooga Foundry* v. *Atlanta*, 203 U. S. 390, 397; *O'Sullivan* v. *Felix*, 233 U. S. 318; *Huntington* v. *Attrill*, 146 U. S. 657, 666–669; *Brady* v. *Daly*, 175 U. S. 148.

Next in order is a Pennsylvania statute containing a limitation of six years. 2 Stewart's Purdon's Digest, 13th ed. 2282. It could apply only in the absence of a controlling Federal statute. Rev. Stat., § 721; *Campbell* v. *Haverhill*, 155 U. S. 610; *McClaine* v. *Rankin*, 197 U. S. 154, 158; *O'Sullivan* v. *Felix, supra.* Such a statute was adopted and put in force before any part of either claim fell within the bar of the local limitation. By the act of June 29, 1906, c. 3591, 34 Stat. 584, 590, Congress amended § 16 of the Act to Regulate Commerce by incorporating therein the following limitations: "All complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after, and a petition for the enforcement of an order for the payment of money shall be filed in the Circuit Court [1] within one year from the date of the order, and not after: Provided, that claims accrued prior to the passage of this Act may be presented

---

[1] The Judicial Code, § 291, which became effective January 1, 1912, requires that the words "Circuit Court" be read "District Court."

within one year." The words of the proviso make it certain that the amendment was to reach claims already accrued as well as those thereafter accruing. And while there doubtless was no purpose to revive claims then barred by local statutes, it is evident that Congress intended to take all other claims out of the operation of the varying laws of the several States and subject them to limitations of its own creation which would operate alike in all the States.

This amendment is the third statute upon which the defendant relies, the contentions advanced thereunder being (a) that it prevented the Commission from considering any claim accrued more than two years prior to the amendment, and (b) that the year granted for filing claims which accrued before the amendment expired June 28, 1907. Either contention, if sound, would defeat all of the first claim in suit and the major part of the second.

The first contention is plainly not tenable. The amendment contained a general provision limiting the time for invoking action by the Commission upon complaints for damages to two years from the accrual of the claim, and also a proviso saying that "claims accrued prior to the passage of this Act may be presented within one year." The proviso was in the nature of a saving clause, and, while, as before observed, it probably was not intended to revive claims which were then barred by applicable local laws, we think there is no warrant for saying that it was not intended to include claims accrued more than two years before the amendment. The plain import of the words is to the contrary. The Commission has uniformly construed it as permitting all accrued claims, not already barred, to be presented within the year named, and we think they reasonably could not have done otherwise.

The other contention turns upon the sense in which the words "the passage of this Act" were used in the proviso. The act contained a concluding section saying

"this Act shall take effect and be in force from and after its passage," but, on the day following its approval, its effective date was postponed by a joint resolution for sixty days, that is, from June 29 to August 28, 1906. 34 Stat. 838. If the act be separately considered and the proviso read in connection with the concluding section, we think it is apparent that the words named referred to the time when the act was to speak and operate as a law, and that the year given for filing accrued claims was to be reckoned from that time. In other words, the meaning was the same as if the proviso had said "claims accrued heretofore may be presented within one year hereafter," or "claims accrued before this Act becomes effective may be presented within one year thereafter." It was not an instance where words referring to the date of passage were chosen to distinguish it from the effective date of the act, for the act was to take effect and be in force upon its passage, and therefore there was no occasion for such a distinction. And, coming to the joint resolution, we think it did not affect the sense of the words in the proviso. That was to be determined in the light of the situation in which they were used, and not by what subsequently happened. Not only so, but the purpose of the joint resolution was to cause the act to speak and operate at the end of the sixty days as if that were the time of its passage. In the meantime the act laid no duty upon this or any other claimant and when the sixty days expired it gave a full year for presenting accrued claims, and not a year less sixty days. See *Matter of Howe,* 112 N. Y. 100; *Harding* v. *People,* 10 Colorado, 387, 392; *State* v. *Bemis,* 45 Nebraska, 724, 739; *Patrick* v. *Perryman,* 52 Ill. App. 514, 518; *Schneider* v. *Hussey,* 2 Idaho, 8; *Charless* v. *Lamberson,* 1 Iowa, 435, 443. It is not a question of notice, as in *Diamond Glue Co.* v. *United States Glue Co.,* 187 U. S. 611, 615–616, but of the meaning and operation of the statute.

It follows from these views that the complaint, which was filed with the Commission July 17, 1907, was seasonably presented and that no part of either claim was barred at that time.  And, as the action in the District Court was begun within a year after the date of the order for reparation, the defense predicated upon the statute of limitations must fail.

With a single exception, the other questions pressed upon our attention center about the use and effect of the reports and orders of the Commission as evidence, a subject concerning which the courts below differed.

The pertinent provisions of the Act to Regulate Commerce are these: Section 14 (34 Stat. 589) requires the Commission, upon investigating a complaint, to make a written report thereon "which shall state the conclusions of the Commission, together with its decision, order, or requirement in the premises," and, if damages be awarded, "shall include the findings of fact on which the award is made."  Section 16 (34 Stat. 590) requires the Commission, upon awarding damages to a complaining party, to make an order directing that "the sum to which he is entitled" be paid within a fixed time; and then, after authorizing a suit to enforce payment, if the order be not obeyed, provides: "Such suit shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the Commission shall be *prima facie* evidence of the facts therein stated."

At the trial the plaintiff offered in evidence the reports and orders of the Commission and asked that the facts stated in the findings and orders be taken as *prima facie* true.

An objection was interposed to the admission of the reports upon the ground that they contained various statements which it was claimed were not findings of fact and therefore were not admissible.  A colloquy ensued

between court and counsel in which counsel for the plaintiff conceded that portions of the reports should be eliminated and suggested that this could be done in the charge to the jury. As a result of the colloquy the reports were received in evidence, the court observing that it would indicate to the jury what portions were to be considered. The reports were not read at the time, but when the evidence was concluded counsel for the plaintiff, as the record recites, "read to the jury what he stated to be material portions" of them. The record does not more definitely identify what was read; nor does it show that complaint was then made that anything was read that should have been omitted, or that the court's attention was drawn to the subject at the time of charging the jury either by a request for a particular instruction thereon or by excepting to the absence of such an instruction. The court's charge apparently proceeded upon the theory that the portions of the reports which had been read to the jury were properly before them. In these circumstances the objection cannot now be considered. If it was not obviated by excluding the supposedly objectionable portions of the reports from what was read to the jury, it was waived by the failure to direct the court's attention to the subject when the jury was charged.

Another objection which was directed against the orders as well as the reports is that they contain no findings of fact or at least not enough to sustain an award of damages. The arguments advanced to sustain this objection proceed upon the theory that the statute requires that the reports, if not the orders, shall state the evidential rather than the ultimate facts, that is to say, the primary facts from which through a process of reasoning and inference the ultimate facts may be determined. We think this is not the right view of the statute and that what it requires is a finding of the ultimate facts—a finding which, as applied to the present case, would disclose (1) the relation of the parties

as shipper and carrier in interstate commerce; (2) the character and amount of the traffic out of which the claims arose; (3) the rates. paid by the shipper for the service rendered and whether they were according to the established tariff; (4) whether and in what way unjust discrimination was practiced against the shipper from November 1, 1900, to August 1, 1901; (5) whether, if there was unjust discrimination, the shipper was injured thereby, and, if so, the amount of his damages; (6) whether the rate collected from the shipper from August 1, 1901, to July 17, 1907, was excessive and unreasonable and, if so, what would have been a reasonable rate for the service; and (7) whether, if the rate was excessive and unreasonable, the shipper was injured thereby, and, if so, the amount of his damages. Upon examining the reports as set forth in the record, we think they contain findings of fact which meet the requirements of the statute and that the facts stated in the findings, if taken as *prima facie* true, sustain the award of the Commission. True, the. findings in the original report are interwoven with other matter and are not expressed in the terms which courts generally employ in special findings of fact, but there is no difficulty in separating the findings from the other matter or in fully understanding them, and particularly is this true when the two reports are read together, as they should be. We say "should be" because both were made in the same proceeding and the later one affirmatively shows that it was made to supplement and give effect to the original.

But it is said that the reports disclose that the Commission applied an erroneous and inadmissible measure of damages, and therefore that no effect can be given to the award. What the reports really disclose is that the Commission, "upon consideration of the evidence adduced upon the hearing upon the question of reparation" found (a) that by reason of the unjust discrimination resulting from

giving the rebate to the Lehigh Valley Coal Company Meeker & Company were "damaged to the extent of the difference" between what they actually paid from November 1, 1900, to August 1, 1901, and what they would have paid had they been dealt with on the same basis as was the Coal Company, and (b) that by reason of being charged an excessive and unreasonable rate from August 1, 1901, to July 17, 1907, Meeker & Company were "damaged to the extent of the difference" between what they actually paid and what they would have paid had they been given the rate which the Commission found would have been reasonable. In this we perceive nothing pointing to the application of an erroneous or inadmissible measure of damages. The Commission was authorized and required by § 8 of the Act to Regulate Commerce to award "the full amount of damages sustained," and that, of course, was to be determined from the evidence. If it showed that the damages corresponded to the rebate in one instance and to the overcharge in the other the claimant was entitled to an award upon that basis. The case of *Pennsylvania Railroad* v. *International Coal Mining Co.*, 230 U. S. 184, is cited as holding otherwise, but it does not do so. There a shipper, without proving that he sustained any damages, sought to recover from a carrier for giving a rebate to another shipper, and this court, referring to § 8, said (p. 203): "The measure of damages was the pecuniary loss inflicted on the plaintiff as the result of the rebate paid. Those damages might be the same as the rebate, or less than the rebate, or many times greater than the rebate; but unless they were proved they could not be recovered. Whatever they were they could be recovered." There is nothing in either report of the Commission which is in conflict with what was said in that case. On the contrary, the plain import of the findings is that the amounts awarded represent the claimant's actual pecuniary loss; and, in view of the recital that the

findings were based upon the evidence adduced, it must be presumed, there being no showing to the contrary, that they were justified by it.

It is also urged, as it was in the courts below, that the provision in § 16 that, in actions like this, "the findings and order of the Commission shall be *prima facie* evidence of the facts therein stated" is repugnant to the Constitution in that it infringes upon the right of trial by jury and operates as a denial of due process of law.

This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most therefore it is merely a rule of evidence. It does not abridge the right of trial by jury or take away any of its incidents. Nor does it in any wise work a denial of due process of law. In principle it is not unlike the statutes in many of the States whereby tax deeds are made *prima facie* evidence of the regularity of all the proceedings upon which their validity depends. Such statutes have been generally sustained, *Pillow* v. *Roberts*, 13 How. 472, 476; *Marx* v. *Hanthorn*, 148 U. S. 172, 182; *Turpin* v. *Lemon*, 187 U. S. 51, 59; Cooley's Constitutional Limitations, 7th ed. 525, as have many other state and Federal enactments establishing other rebuttable presumptions. *Mobile &c. Railroad* v. *Turnipseed*, 219 U. S. 35, 42; *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 81; *Reitler* v. *Harris*, 223 U. S. 437; *Luria* v. *United States*, 231 U. S. 9, 25. An instructive case upon the subject is *Holmes* v. *Hunt*, 122 Massachusetts, 505, where, in an elaborate opinion by Chief Justice Gray, a statute making the report of an auditor *prima facie* evidence at the trial before a jury was held to be a legitimate exercise of legislative power over rules of evidence and in no wise inconsistent with the constitutional right of trial by jury. And in *Chicago &c. Railroad* v. *Jones*, 149 Illinois, 361, 382, a like ruling was

made in respect of a statutory provision similar to that now before us. ·

Complaint is made because the court refused to direct a verdict for the defendant, but of this it suffices to say that the ruling was undoubtedly right, because the plaintiff's evidence, including the findings and orders of the Commission, tended to show every fact essential to a recovery upon both claims and there was no opposing evidence.

The District Court made an allowance of $20,000 as a fee for the plaintiff's attorneys and directed that it be taxed and collected as part of the costs, the allowance being expressly apportioned in equal amounts between the services in the proceeding before the Commission and the services in the action in court. Complaint is made of this on the grounds (a) that the allowance is in any view excessive, (b) that the act does not authorize an allowance for services before the Commission, and (c) that the provision authorizing an allowance for services in the action is invalid as being purely arbitrary and as imposing a penalty merely for failing to pay a debt.

Without considering whether the mere amount of an allowance under the statute can ever be reëxamined here (see Rev. Stat., § 1011; *Martinton* v. *Fairbanks*, 112 U. S. 670, 672; *Montague* v. *Lowry*, 193 U. S. 38, 48; *Railroad Co.* v. *Fraloff*, 100 U. S. 24, 31; *New York &c. Railroad* v. *Winter*, 143 U. S. 60, 75) we are clear that it cannot be in this instance. The record discloses that the allowance was predicated upon an exhibition of a transcript of the proceedings before the Commission and upon a statement made in open court, in the presence of counsel for the defendant, of the services rendered before the Commission and in the action. But the transcript and statement have not been made part of this record and so we cannot know what was shown by them and cannot judge of their bearing upon the amount of the allowance. Besides, it does not appear that the defendant offered any evidence tend-

ing to show what would be a reasonable allowance or that it in any way objected or excepted to the amount of the allowance when it was made. The only exception reserved was addressed to the allowance of any fee for the services before the Commission or for those in the action. In this situation the defendant is not now in a position to claim that as matter of fact the allowance is excessive. Whether as matter of law it is objectionable is another question.

Section 8 provides that a carrier violating the act shall be liable to any person injured for the damages he sustains, "together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case." And § 16, relating to actions to enforce claims for damages after the Commission has acted thereon, provides "If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit."

In our opinion the services for which an attorney's fee is to be taxed and collected are those incident to the action in which the recovery is had and not those before the Commission. This is not only implied in the words of the two provisions just quoted but is suggested by the absence of any reference to proceedings anterior to the action. And that nothing more is intended becomes plain when we consider another provision in § 16 which requires the Commission, upon awarding damages, to make an order directing the carrier to pay the sum awarded "on or before a day named" and then declares that, if the carrier does not comply with the order "within the time limit," the claimant may proceed to collect the damages by suit. The Commission is not to allow a fee, but only to find the amount of the damages and fix a time for payment and, if the carrier pays the award within the time named, no right to an attorney's fee arises. It is only when the

damages are recovered by suit that a fee is to be allowed, and this is as true of the provision in § 8 as of that in § 16. The evident purpose is to charge the carrier with the cost and expenses entailed by a failure to pay without suit— if the claimant finally prevails—and to that end to tax as part of the costs in the suit wherein the recovery is had a reasonable fee for the services of the claimant's attorney in instituting and prosecuting that suit. It follows that the District Court erred in matter of law in allowing a fee for services before the Commission.

The contention that the provision for an attorney's fee for services in the suit is invalid as being purely arbitrary and as imposing a penalty for merely failing to pay a debt is without merit. The provision is leveled against common carriers engaged in interstate commerce, a *quasi* public business, and is confined to cases wherein a recovery is had for damages resulting from the carrier's violation of some duty imposed in the public interest by the Act to Regulate Commerce. *Atlantic Coast Line Railroad* v. *Riverside Mills*, 219 U. S. 186, 208. One of its purposes is to promote a closer observance by carriers of the duties so imposed; and that there is also a purpose to encourage the payment, without suit, of just demands does not militate against its validity. *Missouri, Kansas & Texas Railway* v. *Cade*, 233 U. S. 642, 651, and cases cited. It requires that the fee be reasonable and fixed by the court, and does not permit it to be taxed against the carrier until the plaintiff's demand has been adjudged upon full inquiry to be valid. In these circumstances the validity of the provision is not doubtful but certain.

It results from what has been said that the judgment of the Circuit Court of Appeals must be reversed and that of the District Court must be modified by eliminating the allowance of $10,000 as an attorney's fee for services before the Commission and affirmed as so modified.

*It is so ordered.*