# Matamoras Citizens Water Company, Appellant, *v.* The Public Service Commission.

*Public Service Commission—Public Service, Company—Water companies—Valuation—Fair value—Confiscation.*

On a complaint against the rates of a water company, an order of The Public Service Commission will be affirmed, where the evidence established that the valuation was supported by the evidence before the Commission, and the rate fixed is not confiscatory.

In a valuation case the report of the Commission should take into consideration the essential facts involved. Such report must be sufficiently clear to convey to the reader the understanding that it is based on the evidence presented, or rests on reasonable deductions from the evidence. It is not necessary that there be a specific finding on all the items of fact on which the order rests. This would involve a recorded analysis and summary of the evidence, an impracticable requirement in such a proceeding, regard being had to the reasonable limits of the finding of the commission. It is required that evidence be produced from which the conclusion is reached, but a detailed review of the evidence is not necessarily a part of the order of the Commission.

The complaint of confiscation is not made out by showing there is a probability that there may not be a uniform annual return to the stockholders of 7% in dividends. Estimates at best are approximations and the stockholders are not entitled to a warranty that dividends will be earned yearly at the rate stated.

Argued March 10, 1925. Appeal No. 26, March T., 1925, by plaintiff from order of The Public Service Commission in the case of Borough of Matamoras, and E. B. LaBar, A. O. VanDervort and Lucian Westbrook v. Matamoras Citizens Water Company. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Complaint against Matamoras Citizens Water Company because of increased schedule of rates.

The facts are stated in the opinion of the Superior Court.

The Commission filed a report and order directing the company to file a new schedule, reducing its rates. The respondent appealed.

*Error assigned,* among others, was the order of the Commission.

*Berne H. Evans,* and with him *William A. Feuchs,* for appellant.

*W. B. Ellenberger,* and with him *Harvey Huffman,* for the Borough of Matamoras, intervening appellees.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for The Public Service Commission.

OPINION BY HENDERSON, J., July 9, 1925:

The appellant complains of the action of The Public Service Commission in adopting the order of October 7, 1924, which in effect restrained the appellant from putting in operation the new schedule of rates established by the latter intended to become effective on January 1, 1924, and fixing a valuation on which the company was authorized to establish a rate which would produce a gross annual operating revenue of $10,160. The order is said to have a confiscatory effect. The specific objections are that the reproduction cost was arrived at on other evidence than that presented to the commission; that an estimate of fair value was reached in a lumping conclusion; that no rate was found for accrued depreciation and no account taken of going-concern value in determining the fair value, and that the determination as to required payments of tax and the expense of operation are not supported by the evidence. While a considerable volume of testimony was taken, the facts of the case are not complicated, and the inquiry was within a contracted compass. The town of Matamoras is located on the Delaware River in Pike County. Its population in 1920 was 1,535, a gain of 147 in ten years. A silk mill employing a few of the inhabitants is the only industry in the place. The other members of the com-

munity engaged in industrial employment work in the City of Port Jervis on the opposite side of the river. The streets are unpaved and no physical conditions exist which unfavorably affected the original construction and development of the plant. Two drilled wells having depths of 350 feet and 200 feet located about a quarter of a mile from the river furnish the water supply which is pumped into a concrete reservoir having a capacity of about a hundred thousand gallons. The company owns about two and one-fourth acres of land, about six miles of pipe of varying diameter and fifty fire hydrants. A pump in each well is operated by electricity, but one pump being operated at a time. A steam engine and boiler are maintained to be used in case of necessity. The appellant presented a schedule of the fixed capital as shown by the records of the company which it appeared was book cost, there being some items aggregating over $2,000 with respect to which it was uncertain whether the amount should be charged to capital or income. Among the items involved was a concrete basin which had been used to receive the water from the wells before it was delivered into the distributing reservoir. It was shown that this was not now used and appeared not to be useful. The item of cost for that was therefore excluded. Another considerable item involved was the value of the real estate of the company which was estimated at $1,900. This was reduced by the commission to $300. Another subject of investigation was the cost of service lines claimed by the appellant to be $11,981. The evidence of the intervening appellees was that these service lines were paid for by the consumers and were therefore not a part of the cost of construction. Credible testimony having been offered to the effect that the service lines were paid for by consumers the burden was cast on the appellant to contradict or explain this evidence. This was not successfully done and the commission was not required

to sustain the claim. There was contradictory evidence as to the cost of laying the pipes; the appellant's estimate being based on a depth of five feet, whereas there was evidence in support of the complainants that the depth was from four to four and one-half feet, the conflicting estimates amounting to a difference of $2,636. There was a controversy as to the cost of labor creating a difference of $3,650 in the calculations of the contending parties. A small reduction was made in the cost of furniture. The capital of the company as appears from the Exhibit 7 is $52,-215.69. Exhibit 11 shows that nearly one-fourth of this amount was invested from 1915 to 1923 inclusive. While the enterprise was begun in 1903, the plant was not in operation until 1911. The capital stock consists of 580 shares, a part of which has sold for less than par. There was evidence bearing on the question of operating expenses showing a fluctuation from year to year, including a payment of $1,265 to the directors as fees in 1922. The cost of power varied in different years, and averaged for five years immediately preceding this controversy $476.65 per year. Sixteen specifications of objection to the finding of the commission with respect to the physical plant were made and these we have examined with respect to the charge that the findings are not supported by the evidence or are made without indication of the foundation on which the conclusions rest. It is unnecessary to go into an analysis of the testimony on the various subjects. We think the conclusions can be supported by the evidence or because of the absence of evidence to sustain the position of the respondent. The report of the commission should take into consideration the essential facts involved. Its report must be sufficiently clear to convey to the reader the understanding that it is based on evidence presented or rests on reasonable deductions from the evidence. It is not necessary however

that there be a specific finding on all of the items of fact on which the order rests. This would involve a recorded analysis and summary of the evidence, an impracticable requirement in such a proceeding, regard being had to the reasonable limits of the finding of the commission. It is required that evidence be produced from which the conclusion is reached, but a detailed review of the evidence is not necessarily a part of the order or of the report of the commission: Meeker v. Lehigh Valley Ry. Co., 236 U. S. 412; City of Erie v. Public Service Commission, 278 Pa. 512. An examination of the estimates of reproduction cost and the evidence relating thereto fails to disclose sufficient support for the appellant's contention that the order complained of is based on evidence not before the commission or on deductions not fairly made from the evidence. The complaint of confiscation is not made out by showing there is a probability that there may not be a uniform annual return to the stockholders of 7% in dividends. On the basis of the finding of the commission an adequate return on the investment would accrue, but the estimates at best are approximations and the stockholders are not entitled to a warranty that dividends will be earned yearly at the rate stated. It is very evident that the appellant's plant is of the simplest construction, is operated under highly favorable conditions and is capable of producing a fair rate of interest on the valuation fixed by the commission. We are not convinced that that valuation lacks support in the evidence or that the appellant is subject to an order which is not in conformity with law.

The order of the commission is sustained and the appeal dismissed at the cost of the appellant.