## SOUTH CAROLINA ASPARAGUS GROWERS' ASS'N v. SOUTHERN RY. CO. et al.

### No. 3416.

Circuit Court of Appeals, Fourth Circuit.
April 4, 1933.

Karl Knox Gartner, of Washington, D. C. (James A. Kennedy, of Williston, S. C., on the brief), for appellant.

Charles Clark, of Washington, D. C. (Nath. B. Barnwell, of Charleston, S. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is a suit under section 16 (2) of the Interstate Commerce Act (49 USCA § 16(2), to recover on a reparation order of the Interstate Commerce Commission. A jury trial was waived and the facts were fully found by the judge below. It appears that the reparation order amounting to $10,440.37 embraced certain refrigeration charges and alleged overcharges on shipments of asparagus amounting to $3,989.53. The defendants paid all of this amount except $1,676.70, representing alleged overcharges on shipments of asparagus, prior to April 16, 1922, as to which they denied liability, contending that the report of the commission of February 14, 1929, South Carolina Produce Ass'n v. Aberdeen & Rockfish R. Co., 152 I. C. C. 5, 13, 14, 28, shows that there was no overcharge found as to these shipments. From a judgment in favor of defendants, the plaintiff, the South Carolina Asparagus Growers' Association, has appealed.

Assuming that the plaintiff would be entitled to recover as consignor any overcharges collected by defendants upon the shipments in question (see Louisville & N. R. R. v. Sloss-Sheffield Co., 269 U. S. 217, 46 S. Ct. 73, 70 L. Ed. 242; Southern Pac. Co. v. Darnell-Taenzer Co., 245 U. S. 531, 38 S. Ct. 186, 62 L. Ed. 451), we agree with defendants that no such overcharges have been shown. It is true that the commission in its report referred to above, under the head of findings, said (152 I. C. C. 28): "In No. 14597 we find that the rates assailed from Ridge Spring, Trenton, and Williston on asparagus prior to August 15, 1923, were unreasonable to the extent that they exceeded the rates which became effective on that date; that in so far as complainants' members have made interstate shipments and paid the charges thereon at the rates found unreasonable they have been damaged thereby in the amount of the difference between the charges paid and

those which would have accrued at the rates found reasonable and that they are entitled to reparation with interest."

And we think, nothing else appearing, that this would amount to an administrative finding which would entitle plaintiff to recover overcharges for two years prior to January 17, 1923, the date of the filing of their complaint; but something else appears, i. e., that the intention of the commission was to find the rates complained of unreasonable only to the extent that they exceeded rates contemporaneously prevailing from Charleston. With respect to this the commission said, at page 14 of 152 I. C. C.: "The complaint in No. 14597 was filed January 17, 1923, and placed in issue the rates on asparagus as far back as January 18, 1921. Since a change was made in the rates from these points on August 15, 1923, it is clear that there are two quite different bases of rates under attack in this proceeding, namely, the basis existing prior to the reduction on that date and the much lower basis thereafter in effect. This latter basis merely reflected the rates prescribed by us from Charleston in Asparagus Growers Asso. v. A. C. L. R. R. Co. [17 I. C. C. 423], supra, adjusted to the general rate changes since that decision. In arriving at our finding of reasonableness in our prior report, apparently we were considering only the rates in effect after the reduction of August 15, 1923. The report does not deal with the much higher rate structure existing prior to that date from Ridge Spring, Trenton, and Williston. The evidence indicates that the asparagus growers at these latter points should have had as favorable a basis as that contemporaneously prevailing at Charleston, and our former finding will be modified accordingly."

We think that what is said by the commission at the end of its report under the head of findings must be construed along with what is said in the body of the report. Meeker v. Lehigh Valley R. Co., 236 U. S. 412, 428, 35 S. Ct. 328, 59 L. Ed. 644, Ann. Cas. 1916B, 691; American Express Co. v. South Dakota ex rel. Caldwell, 244 U. S. 617, 626, 37 S. Ct. 656, 61 L. Ed. 1352; Georgia Public Service Com. v. U. S., 283 U. S. 765, 771, 51 S. Ct. 619, 75 L. Ed. 1397. And when the report and finding are thus construed together, it is clear that the rates from Ridge Spring, Trenton, and Williston were held to be unreasonable only to the extent that they exceeded the basis prevailing contemporaneously from Charleston. As the rates from Charleston were not reduced below

those from the other three points until April 16, 1922, it follows, we think, that the finding as to unreasonableness in the rates from these points relates back only to that date.

It is argued that the rates from Ridge Spring, Trenton, and Williston to Rochester and other interior eastern points had been attacked before the commission as being unreasonable when compared with rates prevailing from the same points of origin to eastern seaboard cities; and that the rates from Charleston had nothing to do with the matter. It is clear, however, that the commission intended to hold the rates complained of unreasonable only to the extent that they exceeded the rates contemporaneously prevailing from Charleston and that its former finding, in which the rates had been approved, should be "modified accordingly." To uphold the contention of plaintiff would be to destroy, for the period prior to April 16, 1922, the very parity which the report shows it to have been the purpose of the commission to preserve.

And we think it equally clear that defendants are not estopped from contesting payment of the reparation order by anything in the proceedings had before the commission. The commission's administrative finding, fixing the extent to which the rates charged were unreasonable, is binding upon the courts. Mitchell Coal & Coke Co. v. P. R. R. Co., 230 U. S. 247, 258, 33 S. Ct. 916, 921, 57 L. Ed. 1472; United States v. L. & N. R. Co., 235 U. S. 314, 320, 321, 35 S. Ct. 113, 59 L. Ed. 245. But defendants had the right to review the action of the commission in awarding damages under such administrative finding, and on such review the order awarding damages is only prima facie evidence. 49 USCA § 16(2); Meeker & Co. v. Lehigh Valley R. Co., 236 U. S. 412, 430, 35 S. Ct. 328, 59 L. Ed. 644, Ann. Cas. 1916B, 691; Baltimore & O. R. Co. v. Brady, 53 S. Ct. 441, 77 L. Ed. ——. The distinction is well stated by Mr. Justice Lamar in Mitchell Coal & Coke Co. v. P. R. R. Co., supra, as follows: "Such orders, so far as they are administrative, are conclusive, whether they relate to past or present rates, and can be given general and uniform operation, since all shippers who have been or may be affected by the rate can take advantage of the ruling and avail themselves of the reparation order. They are quasi judicial and only prima facie correct in so far as they determine the fact and amount of damage,—as to which, since it involves the payment of money and taking of property, the carrier is, by § 16 of the act,

given its day in court and the right to a judicial hearing."

Since the administrative finding, as we have seen, adjudged unreasonable only the rates charged subsequent to the reduction of the rates from Charleston on April 16, 1922, the reparation order should not have included damages on account of charges on shipments prior to that date. The certificates under rule V were admissions sufficient to prove the facts to which they related, i. e., the amount collected under the rates in question. Mellon v. World Publ. Co. (C. C. A. 8th) 20 F.(2d) 613, 617. They did not, however, operate as an estoppel and could not conclude defendants as to what had been determined by the commission in its administrative capacity.

We think that the court below was in error in taxing the costs in that court against plaintiff, in view of the provision of the statute that, in a suit to enforce a reparation order, a petitioner shall not be liable for costs in the District Court. 49 USCA § 16(2); St. Louis & S. F. R. Co. v. Spiller, 275 U. S. 156, 159, 48 S. Ct. 96, 72 L. Ed. 214. This was probably an inadvertence, as attention does not seem to have been specifically called to the matter.

The judgment below will be modified by striking out the taxation of costs against plaintiff; and as so modified it will be affirmed.

Modified and affirmed.