**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 23, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff - Appellee,

v.

No. 15-2087

CHARLES R. KOKESH,

     Defendant - Appellant.
_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:09-CV-01021-SMV-LAM)**
_____

Clinton W. Marrs, Marrs Griebel Law, Ltd., Albuquerque, New Mexico for Defendant-Appellant.

Sarah R. Prins, Attorney (Anne K. Small, General Counsel, Sanket J. Bulsara, Deputy General Counsel, Michael A. Conley, Solicitor, and Benjamin L. Schiffrin, Senior Litigation Counsel, with her on the brief), Securities and Exchange Commission, Washington, D.C., for Plaintiff-Appellee.
_____

Before **HARTZ**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

The Securities and Exchange Commission (SEC) brought an enforcement action

against Defendant Charles Kokesh for misappropriating funds from four SEC-registered

business development companies (BDCs) in violation of federal securities laws. After a jury returned a verdict in favor of the SEC, the United States District Court for the District of New Mexico entered a final judgment permanently enjoining Defendant from violating certain provisions of federal securities laws, ordering disgorgement of $34.9 million plus prejudgment interest of $18.1 million, and imposing a civil penalty of $2.4 million. Defendant appeals, asserting that the court's imposition of the disgorgement and permanent injunction was barred by 28 U.S.C. § 2462, which sets a five-year limitations period for suits "for the enforcement of any civil fine, penalty, or forfeiture." He also argues that the district court erred by precluding him from presenting evidence of attorney and accountant participation to show his lack of knowledge of the misconduct. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. We hold that both the permanent injunction and the disgorgement order are remedial and not subject to § 2462. And we reject the evidentiary claim.

## I. BACKGROUND

The BDCs from which Defendant misappropriated funds were Technology Funding Medical Partners I, L.P.; Technology Funding Partners III, L.P.; Technology Funding Venture Partners IV, An Aggressive Growth Fund, L.P.; and Technology Funding Venture Partners V, An Aggressive Growth Fund, L.P. (collectively, the Funds). The Funds raised money from investors through public securities offerings and invested in private start-up companies that focused on technology, biotechnology, and medical diagnostics.

2

As a limited partnership, each Fund was governed by a written agreement. Each agreement provided for the election of three individual general partners and two managing general partners. The managing general partners conducted day-to-day operations and made investment recommendations, subject to supervision by the governance committee of each Fund, which was composed of the individual general partners or the individual general partners and two representatives of the managing general partners.

Technology Funding Ltd. and Technology Funding, Inc. (collectively, the Advisers), which were SEC-registered investment advisers, were the managing general partners for each Fund. The Advisers were owned and controlled by Defendant. They had contracts with the Funds—which were signed by Defendant—that described how they would be compensated. The contracts prohibited any payments to the Advisers that were not expressly specified.

From 1995 through 2006, Defendant directed the Advisers' treasurer to take $23.8 million from the Funds to pay salaries and bonuses to officers of the Advisers (which included Defendant himself) and to take $5 million to cover the Advisers' office rent. In 2000 he also caused the Advisers to take $6.1 million in payments described as "tax distributions" in SEC reports that he signed. Defendant received over 90% of these "tax distributions," despite paying only $10,304 in federal taxes that year.

These payments violated the contracts between the Advisers and the Funds. First, until 2000 the contracts prohibited payments for salaries of the Advisers' controlling persons, including Defendant and other officers. Although the contracts were amended in

3

2000 to permit reimbursement for controlling-person salaries, the amendment was based on a misleading proxy statement (signed by Defendant) which falsely identified him as the only controlling person and grossly underreported his annual salary. Second, the contracts did not provide for bonus payments and Defendant did not disclose the bonuses to the Funds' directors or in SEC filings that he signed on the Funds' behalf. Third, the contracts specifically prohibited rent reimbursement, yet he failed to disclose the rent payments to the Funds' directors. Fourth, although the contracts allowed for payment of tax obligations if certain conditions were met, the 2000 payment did not satisfy these conditions.

Before trial the SEC filed a motion in limine to preclude Defendant from offering evidence that he reasonably relied on the advice of his counsel and his accountants. The district court granted this motion under Fed. R. Evid. 403, finding that any probative value of such evidence was outweighed by the danger of confusing the issues and misleading the jury. The court acknowledged, however, that such evidence could be presented if Defendant met the test for an advice-of-counsel defense under *United States v. Wenger*, 427 F.3d 840 (10th Cir. 2005).

The case was tried to a jury, which found (1) that Defendant knowingly and willfully converted the Funds' assets to his own use or to the use of another and (2) that he knowingly and substantially assisted the Advisers in defrauding the Funds, in filing false and misleading reports with the SEC, and in soliciting proxies using false and misleading proxy statements. The court found that disgorgement of $34.9 million "reasonably approximates the ill-gotten gains causally connected to Defendant's

4

violations," Aplt. App., Vol. 2 at 1880 (order granting SEC's motion for entry of final judgment), and that an order enjoining him from violating certain provisions of federal securities laws was warranted because "there is a reasonable and substantial likelihood that Defendant will again violate the securities laws," *id.* at 1876.

## II. DISCUSSION

Defendant appeals on two grounds: (1) that the injunction and disgorgement order, obtained under 15 U.S.C. § 78u(d)(1), (5), must be set aside because the claims accrued more than five years before the SEC brought its action and are therefore barred under the five-year statute of limitations in 28 U.S.C. § 2462 for government suits seeking penalties or forfeitures; and (2) that the district court erred in disallowing evidence of attorney and accountant participation to show his lack of knowledge of the misconduct. We address each in turn.

### A. Section 2462

Unless another statute specifies otherwise, § 2462 sets a five-year limitations period for claims seeking certain sanctions. It states:

> Except as otherwise provided by Act of Congress, an *action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture*, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

*Id.* (emphasis added). "The construction and applicability of a federal statute of limitation is a question of law we review *de novo*." *United States v. Telluride Co.*, 146 F.3d 1241, 1244 (10th Cir. 1998). Statutes of limitation are interpreted narrowly in the

5

government's favor "to protect the public from the negligence of public officers in failing to timely file claims in favor of the public's interests." *Id.* at 1246 n.7; *see also Guar. Trust Co. of New York v. United States*, 304 U.S. 126, 132–33 (1938) (public policy generally supports not imposing laches or statutes of limitations on the government). And we have also recognized that equitable claims are usually not subject to statutes of limitations. *See Telluride*, 146 F.3d at 1245.

Defendant argues that the injunction (an order to refrain from future violations of certain provisions of federal securities laws) is a penalty and the disgorgement order is a penalty or forfeiture within the meaning of § 2462. We first discuss the injunction.

### 1. Injunction

The district court's final judgment ordered "that Defendant is permanently enjoined from directly or indirectly violating Section 206(1) and (2) of the Investment Advisers Act; Section 13(a) of the Exchange Act and Exchange Act Rules 12b-20, 13a-1, and 13a-13; Section 14(a) of the Exchange Act and Exchange Act Rule 14a-9; Section 37 of the Investment Company Act, and Section 205(a) of the Investment Advisers Act." Aplt. App., Vol. 2 at 1883 (final judgment). We fail to see how an order to obey the law is a penalty. Its purpose is not to penalize Defendant; after all, everyone has a duty to obey the law. It is to protect the public by giving Defendant an added incentive to conduct himself in accordance with the securities laws: violating the injunction would subject him to the court's contempt power, *see* 18 U.S.C. § 401(3) (authorizing courts to punish disobedience of a lawful order). It has been recognized for some time that such an order is "purely remedial and preventative," and not a penalty or forfeiture. *Drath v.*

6

*F.T.C.*, 239 F.2d 452, 454 (D.C. Cir. 1956) (internal quotation marks omitted); *see id.* ("One is not prosecuted by being told to desist from illegal conduct, nor does he thereby suffer the imposition of a penalty or the forfeiture of any legally-protected right or property."); *Welch Sci. Co. v. N.L.R.B.*, 340 F.2d 199, 202–03 (2d Cir. 1965) (NLRB's order that "the company should cease and desist from interrogating the New York employees concerning their [union] membership" (a violation of the National Labor Relations Act) was "purely remedial"); *cf. Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("The historic injunctive process was designed to deter, not to punish."). More recently, the D.C. Circuit applied that proposition to hold that § 2462 does not apply to an SEC cease-and-desist order to refrain from violating securities laws. *See Riordan v. S.E.C.*, 627 F.3d 1230, 1234–35 (D.C. Cir. 2010); *In the Matter of Guy P. Riordan*, Release No. 9085, 2009 WL 4731397 (Dec. 11, 2009) (ordering "that Guy P. Riordan cease and desist from committing or causing any violations or future violations of Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Exchange Act Rule 10b-5"). We fully agree with the D.C. Circuit.

Defendant relies on another decision by that circuit, *Johnson v. S.E.C.*, 87 F.3d 484, 491–92 (D.C. Cir. 1996), holding that the SEC injunction in that case did impose a penalty. But in *Johnson* the injunction censured the violator and imposed a six-month disciplinary suspension "from acting in a supervisory capacity with any broker or dealer." *Id.* at 486. The court held that on the facts of record "it is evident that the sanctions here were not based on any . . . showing of the risk she posed to the public, but rather were based on [her] alleged failure reasonably to supervise [a subordinate]." *Id.* at 489. The

7

court rejected the SEC's contention that "the sanctions were imposed not as punishment for past dereliction, but primarily because of [her] present danger to the public." *Id.* at 490. We need not assess whether we agree with that opinion. We need only point out that there is a qualitative difference between a disciplinary suspension and being ordered to comply with the law. There is no inconsistency between the circuit's decision in *Johnson* and its later decision in *Riordan* holding that § 2462 does not apply to an order requiring compliance with the securities laws.

Finally, Defendant argues that in light of his age, insolvency (and meager prospects of recovering from it), and the passage of time since his unlawful conduct, he is unlikely to engage in the conduct for which he is liable here, so the injunction must be intended solely to punish him. He further argues that the SEC did not allege any wrongdoing by him after the Funds and the Advisers were dissolved, so he is being punished for past conduct, as in *Johnson*. We are not persuaded. If Defendant is not going to engage in securities-related activity, the order does not punish him. And the absence of SEC allegations of recent misconduct did not preclude the district court from finding that he still poses a risk to the public. The court found that Defendant's occupation would "present opportunities for future violations" because of his extensive experience with owning and controlling investment-adviser firms and operating investment companies. Also, noting Defendant's work history, his extravagant lifestyle, and his demeanor, the court expressly rejected his statement that he would not engage in business activity that could present opportunities for future securities-laws violations. These are factual matters and the court did not clearly err in its findings. *See Att'y. Gen.*

8

*of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 775–76 (10th Cir. 2009) (factual findings underlying injunction are reviewed for clear error).

## 2. Disgorgement

Disgorgement "consists of factfinding by a district court to determine the amount of money acquired through wrongdoing—a process sometimes called 'accounting'—and an order compelling the wrongdoer to pay that amount plus interest to the court." *United States v. Badger*, 818 F.3d 563, 566 (10th Cir. 2016) (internal quotation marks omitted). The amount of the disgorgement is essentially the same whether the relief is sought in a private cause of action or, as in this case, by the government. *See* 15 U.S.C. § 78u(d)(5) (authorizing court to grant equitable relief sought by SEC); *F.T.C. v. Bronson Partners, LLC*, 654 F.3d 359, 369–70 (2d Cir. 2011) (affirming district court's award because it "satisfies the requirements of equitable disgorgement").

Defendant, who owned and controlled the Advisers, misappropriated $34.9 million from the Funds between 1995 and 2006 to pay salaries and bonuses to officers of the Advisers (including himself), to pay the Advisers' office rent, and to pay phony "tax distributions." The district court ordered him to disgorge this money that went to him and his subordinate cohorts, finding that the sum "reasonably approximates the ill-gotten gains causally connected to [his] violations." Aplt. App., Vol. 2 at 1880. Defendant claims that the disgorgement order is a penalty or forfeiture. We disagree. We first address the claim that it is a penalty.

We have previously said that disgorgement is not a penalty under § 2462 because it is remedial. *See Telluride*, 146 F.3d at 1247 ("[O]ther equitable remedies, *such as*

9

*disgorgement*, which sanction past conduct, are remedial [rather than punitive]."

(emphasis added)).  Other circuits have similarly held that it is not.  *See Riordan*, 627

F.3d at 1234 ("[D]isgorgement orders are not penalties, at least so long as the disgorged

amount is causally related to the wrongdoing."); *S.E.C. v. Tambone*, 550 F.3d 106, 148

(1st Cir. 2008) ("[T]he applicable five-year statute of limitations period [the defendant]

invokes applies only to penalties sought by the SEC, not its request for injunctive relief or

the disgorgement of ill-gotten gains."), *withdrawn*, 573 F.3d 54 (1st Cir. 2009), *reinstated

in relevant part*, 597 F.3d 436, 450 (1st Cir. 2010).

The reasons for this view are clear.  Properly applied, the disgorgement remedy

does not inflict punishment.  "The object of restitution [in the disgorgement context] . . .

is to eliminate profit from wrongdoing while avoiding, so far as possible, the imposition

of a penalty."  Restatement (Third) of Restitution and Unjust Enrichment § 51(4) (Am.

Law Inst. 2010).  Disgorgement just leaves the wrongdoer "in the position he would have

occupied had there been no misconduct."  *Id.* § 51 cmt. k; *see id.* ("Disgorgement of

wrongful gain is not a punitive remedy.").  To be sure, disgorgement serves a deterrent

purpose, but it does so only by depriving the wrongdoer of the benefits of wrongdoing.

*See S.E.C. v. Contorinis*, 743 F.3d 296, 301 (2d Cir. 2014) ("[D]isgorgement does not

serve a punitive function . . . .  [Its] underlying purpose is to make lawbreaking

unprofitable for the law-breaker . . . ."); *S.E.C. v. First City Fin. Corp.*, 890 F.2d 1215,

1231 (D.C. Cir. 1989) ("[D]isgorgement primarily serves to prevent unjust

enrichment . . . .").  Indeed, if punishment is required, disgorgement can be supplemented

with exemplary damages.  *See* Restatement (Third) § 51 cmt. k.

Defendant complains that the disgorgement order is punitive because he is being required to disgorge more than he actually gained himself (some of the misappropriated money went to others). But there is nothing punitive about requiring a wrongdoer to pay for all the funds he caused to be improperly diverted to others as well as to himself. S*ee Contorinis*, 743 F.3d at 307 ("[W]hen third parties have benefitted from illegal activity, it is possible to seek disgorgement from the violator, even if that violator never controlled the funds. The logic of this . . . is that to fail to impose disgorgement on such violators would allow them to unjustly enrich their affiliates."); *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1098 (9th Cir. 2010) ("A person who controls the distribution of illegally obtained funds is liable for the funds he or she dissipated as well as the funds he or she retained."); *S.E.C. v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1114–15 (9th Cir. 2006) (defendant was not entitled to deduct business and operating expenses from the amount of his disgorgement because "it would be unjust to permit the defendants to offset against the investor dollars they received the expenses of running the very business they created to defraud those investors into giving the defendants the money in the first place"); *S.E.C. v. Banner Fund Int'l*, 211 F.3d 602, 617 (D.C. Cir. 2000) ("[A]n order to disgorge establishes a personal liability, which the defendant must satisfy regardless whether he retains the selfsame proceeds of his wrongdoing."). After all, we do not consider it punitive to require a personal-injury tortfeasor to pay for all damages caused by his tort (say, a motor-vehicle accident) even if he gained nothing thereby.

Defendant also argues that the disgorgement order is punitive because in light of his age (late sixties) and insolvency, there is no prospect of his restoring the gains he

11

received. But the likelihood of the government's recovery is irrelevant to determining whether his disgorgement order is punitive or remedial because it does not change the nature of the sanction. The disgorgement order does not require Defendant to do more than he is capable of.

Defendant next contends that disgorgement is a "forfeiture." To be sure, in common English the words *forfeit* and *disgorge* (as well as *relinquish*) capture similar concepts; one subject to formal forfeiture could be said to "disgorge" what is forfeited. The definitions in the leading legal dictionary, although different, also have similarities. *See Black's Law Dictionary* 568, 765 (10th ed. 2014) (defining *disgorgement* as "[t]he act of giving up something (such as profits illegally obtained) on demand or by legal compulsion," and *forfeiture* as "[t]he loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty"). Because of these similarities the Eleventh Circuit recently held that disgorgement is a forfeiture under § 2462. *See S.E.C. v. Graham*, 823 F.3d 1357, 1363–64 (11th Cir. 2016).

Other circuits have a different view. *See Riordan*, 627 F.3d at 1234; *Tambone*, 550 F.3d at 148 (§ 2462 does not apply to disgorgement); *see also S.E.C. v. Saltsman,* No. 07-CV-4370 (NGG) (RML), 2016 WL 4136829, at *25–29 (E.D.N.Y. Aug. 2, 2016) (rejecting *Graham* and citing three other district courts sharing that view). Respectfully, we also see things a bit differently. The word *forfeiture* in § 2462 must be read in the context of government causes of action—"an action, suit or proceeding," 28 U.S.C. § 2462. Government forfeiture actions date back to the early days of the Republic, and for most of the time since then have had a narrow focus. Forfeiture was an in rem procedure

12

to take "tangible property used in criminal activity." *United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 118 (1993). Indeed, *Black's Law Dictionary* defines *civil forfeiture*— which, in our view, is the relevant definition here—as "[a]n in rem proceeding brought by the government against property that either facilitated a crime or was acquired as a result of criminal activity." As the Supreme Court has summarized: "The First Congress enacted legislation authorizing the seizure and forfeiture of ships and cargos involved in customs offenses. Other statutes authorized the seizure of ships engaged in piracy . . . . Later statutes involved the seizure and forfeiture of distilleries and other property used to defraud the United States of tax revenues from the sale of alcoholic beverages." *Id.* at 119–20. The owner of the seized property could be completely innocent of any wrongdoing, and the value of the property taken have no necessary relation to any loss to others or gain to the owner. A modern-day example makes the point. In *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974), the Supreme Court affirmed a forfeiture proceeding in which a yacht was seized from an innocent owner after government officers apparently found only one marijuana cigarette on the yacht while it was under the control of the lessee, *see id.* at 693 (Douglas, J., dissenting).

When the term *forfeiture* is linked in § 2462 to the undoubtedly punitive actions for a *civil fine* or *penalty*, it seems apparent that Congress was contemplating the meaning of *forfeiture* in this historical sense. The nonpunitive remedy of disgorgement does not fit in that company. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* ch. 31, 195–98 (2012) ("Associated words bear on one

13

another's meaning (*noscitur a sociis*).").  In fact, construing a predecessor to § 2462, which imposed a five-year limitations period for a "suit or prosecution for any penalty or forfeiture," the Supreme Court said that "[t]he words 'penalty or forfeiture' in this section refer to something imposed in a punitive way for an infraction of a public law."  *Meeker v. Lehigh Valley R.R. Co.*, 236 U.S. 412, 423 (1915).

We recognize that in recent years some federal forfeiture statutes have been expanded to include disgorgement-type remedies, *see* 18 U.S.C. § 1963(a)(3) (authorizing forfeiture of *proceeds* from racketeering activity); 21 U.S.C. § 881(a)(6) (authorizing forfeiture of the *proceeds* of illegal drug transactions).  But this is a recent development, occurring decades after § 2462 was enacted in 1948.  The Supreme Court recently discussed the development in *United States v. 92 Buena Vista Ave.*, 507 U.S. 111 (1993) (addressing scope of innocent-owner exception to federal forfeiture statute). The introduction of "disgorgement" features in the forfeiture laws began with the 1978 amendment to the Comprehensive Drug Abuse Prevention and Control Act of 1970, which "authorize[d] the seizure and forfeiture of proceeds of illegal drug transactions" and continued with the 1984 amendment to the Racketeer Influenced and Corrupt Organizations Act, which likewise authorized "forfeiture of 'proceeds'" from racketeering activity.  *Id.* at 121 & n.16.  These changes in the forfeiture statutes "marked an important *expansion* of governmental power."  *Id.* at 121 (emphasis added).  But this expansion should not expand the meaning of the word *forfeiture* in § 2462 to encompass traditional disgorgement remedies outside those forfeiture statutes.  We have said that when interpreting statutory language, "words will be interpreted as taking their ordinary,

14

contemporary, common meaning at the time Congress enacted the statute." *Hackwell v. United States*, 491 F.3d 1229, 1236 (10th Cir. 2007) (internal quotation marks omitted).

Further, we must not forget that we are to construe § 2462 in the government's favor to avoid a limitations bar. *See Telluride*, 146 F.3d at 1246 & n.7. We should not strain to expand the meaning of the statute's language to restrict the government. We conclude that the disgorgement order in this case is not a forfeiture within the meaning of § 2462.

Because we hold that the disgorgement order and injunction in this case are neither penalties nor forfeitures under § 2462, we need not decide whether (as requested by the government) the statute is inapplicable to all equitable remedies; nor need we decide whether disgorgement remedies in forfeiture statutes come under § 2462. And for the same reason, we need not address Defendant's arguments that the government's causes of action accrued more than five years before it filed suit and that the statute is jurisdictional.

## B. Evidence of the Participation of Lawyers and Accountants

Defendant argues that the district court erred in disallowing his proffered evidence of attorney and accountant participation. He asserts that the evidence was proper to "show[] that, because of his dealings with the Funds' lawyers and accountants, he had no contemporaneous awareness that he was 'part of an overall activity that was improper' and did not knowingly assist primary violation, of which he was unaware." Aplt. Br. at 61.

15

Evidence of reliance on professionals such as attorneys and accountants is, however, significantly restricted in this circuit. Under the standard set forth in *Wenger*, ordinarily "the defendant must show (1) a request for advice of [independent] counsel on the legality of a proposed action, (2) full disclosure of the relevant facts to counsel, (3) receipt of advice from counsel that the action to be taken will be legal, and (4) reliance in good faith on counsel's advice," 427 F.3d at 853 (internal quotation marks omitted); *see C.E. Carlson, Inc. v. S.E.C.*, 859 F.2d 1429, 1436 (10th Cir. 1988). Defendant does not contend that he satisfied the *Wenger* requirements in seeking to put on evidence regarding his attorneys and accountants. Rather, he argues that *Wenger* is inapplicable. As we understand his position, it is that restrictions on evidence of reliance on professionals concerns only evidence offered to negate specific intent such as willfulness or intent to defraud. Here, in contrast, he claims to be offering the evidence to negate his knowledge of relevant facts. That may be a valid distinction. If a defendant contends that a professional adviser failed to convey historical facts, *Wenger* may not apply. But if Defendant is merely saying that a professional adviser failed to convey the "fact" that a transaction contravened a contract or a statute (that is, failed to convey professional advice), *Wenger* controls. Unfortunately for Defendant, his briefs on appeal do not preserve the issue. Although he cites to the record, we decline to review his challenge to the exclusion of evidence because his briefs fail to identify specific items of testimony that would have been offered and to state why each would have been relevant. *See Reinhart v. Lincoln County*, 482 F.3d 1225, 1228 n.1 (10th Cir. 2007) (citation to record did not preserve issue). Moreover, even if Defendant's evidence was somewhat

16

probative, it could be excluded under Fed. R. Evid. 403 if "its probative value is substantially outweighed by a danger of . . . confusing the issues." And, as Defendant acknowledges in his opening brief, the district court relied on that rule to exclude evidence about his attorneys and accountants. Yet Defendant's opening brief never addresses this basis for excluding his evidence. This failure waives the issue on appeal. *See SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1226 (10th Cir. 2009) (issue is waived when appellant fails to challenge an "alternative, independently sufficient basis for the district court's ruling" in its opening brief); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."). We therefore affirm exclusion of the evidence.

## III. CONCLUSION

We AFFIRM the district court's final judgment.

17