KAVANAUGH, Circuit Judge, concurring: I add this brief concurrence to explain why I believe the Court is correct to remand this case to the SEC. Our precedents say that the SEC may approve expulsion or suspension of a securities broker as a remedy, but not as a penalty. Our cases in turn have upheld various expulsions or suspensions as remedial. See, e.g., PAZ Securities, Inc. v. SEC, 566 F.3d 1172, 1175-76 (D.C. Cir. 2009). Our use of the term “remedial” to describe expulsions or suspensions finds its roots in a single, unexplained sentence in a 77-year-old Second Circuit case. See Wright v. SEC, 112 F.2d 89, 94 (2d Cir. 1940). Applying those precedents here, the SEC concluded that the lifetime expulsion of Saad from the securities industry was permissible because the sanction was remedial, not punitive. My fundamental problem with this line of cases is that the term “remedial” makes little sense when describing the expulsion or suspension of a securities broker. Like other punitive sanctions, expulsion and suspension may deter others and will necessarily deter and prevent the wrongdoer from further wrongdoing. Expulsion and suspension may thereby protect the investing public. But expulsion and suspension do not provide a remedy to the victim. Under any common understanding of the term “remedial,” expulsion and suspension of a securities broker are not remedial. Rather, expulsion and suspension are punitive. Of course, as a three-judge panel, we ordinarily must stick with our precedents. But here, the Supreme Court’s recent decision in Kokesh v. SEC, — U.S. —, 137 S.Ct. 1635, 198 L.Ed.2d 86 (2017), means that we can no longer characterize an expulsion or suspension as remedial. After the Supreme Court’s decision in Kokesh, in other words, our precedents characterizing expulsions or suspensions as remedial are no longer good law. In Kokesh, the Supreme Court ruled that disgorgement paid to the Government is a “penalty” subject to the five-year statute of limitations in 28 U.S.C. § 2462. 137 S.Ct. at 1643-45. The Court reasoned that the disgorged money often does not go to victims and, moreover, is not limited to the amount of harm to victims—both of which would be required if the sanction were truly remedial rather than punitive. See id. at 1644-45. The Court stated: “Sanctions imposed for the purpose of deterring infractions of public laws are inherently punitive because deterrence is not a legitimate nonpunitive governmental objective.” Id. at 1643 (internal quotations omitted). And the Court added: “A civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.” Id. at 1645 (internal quotations omitted). Notably, the Supreme Court’s decision in Kokesh overturned a line of cases from this Court that had concluded that disgorgement was remedial and not punitive. See, e.g., Zacharias v. SEC, 569 F.3d 458, 471-72 (D.C. Cir. 2009). As I see it, the Kokesh analysis matters here. The Supreme Court’s reasoning in Kokesh was not limited to the specific statute at issue there. Like disgorgement paid to the Government, expulsion or suspension of a securities broker does not provide anything to the victims to make them whole or to remedy their losses. Therefore, in light of the Supreme Court’s analysis in Kokesh, expulsion or suspension of a securities broker is a penalty, not a remedy. Judge Millett’s separate opinion cites cases such as Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), for the proposition that occupational debar-ments are not punitive. But the question in Smith v. Doe, for example, was whether a particular sanction (there, required registration as a sex offender) was civil or criminal for purposes of the Ex Post Facto Clause: Some penalties are civil, and some penalties are criminal. The question of whether a penalty is civil or criminal is distinct from (although overlapping with) the question of whether a sanction is a penalty rather than a remedy. See Hudson v. United States, 522 U.S. 93, 105, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (civil penalty at issue there was not “criminally punitive” for double jeopardy purposes). As I read it, nothing in Smith v. Doe or any of the other Supreme Court cases cited by Judge Millett’s separate opinion says or suggests that occupational debarment is a remedy. Judge Millett’s separate opinion also states that Saad forfeited any argument that the sanction here was punitive, not remedial. I respectfully disagree. Saad expressly argued both to the SEC and to this Court that the lifetime expulsion in his case was punitive, not remedial. He of course did not cite Kokesh because Kokesh was not yet decided at the time. In my view, Saad preserved the argument that the sanction imposed on him was a penalty, not a remedy. Judge Millett’s separate opinion distinguishes this case from ordinary civil penalty cases by relying on FINRA’s status as a self-regulatory organization. But by statute, FINRA is heavily regulated by the SEC, and a FINRA-sanctioned party has a right to appeal FINRA sanctions to the SEC. See 15 U.S.C. § 78s; 788(d).[1] FINRA is therefore not akin to, for example, a state bar association or the National Football League—organizations that may impose discipline without statutorily required review by a federal agency. In appeals from FINRA sanctions,' the SEC must determine whether the FINRA-imposed sanctions are “excessive or oppressive.” 15 U.S.C. § 78s(e)(2). Our pre-Kokesh■ cases in turn say that the SEC may uphold FINRA sanctions as not being excessive" or oppressive if the sanctions are remedial, not punitive. See Siegel v. SEC, 592 F.3d 147 (D.C. Cir. 2010); Paz, 566 F.3d at 1175-76. And our pre-Kokesh cases further say that an expulsion or suspension can be considered remedial, not punitive. My sole point here is to cast doubt on our pr e-Kokesh cases’ characterization of an expulsion or suspension as remedial rather than punitive. My point is not to suggest that FINRA lacks power to impose punitive sanctions such as expulsions or suspensions. After all, FINRA Rule 8310 expressly allows FINRA to impose expulsions and suspensions in appropriate cases. See also 15 U.S.C. § 78o-3(b)(7) (authorizing FINRA to impose expulsions or suspensions). And the SEC may still approve an expulsion or suspension if such a FINRA-imposed sanction is an appropriate (that is, not “excessive or oppressive”) penalty in particular cases. The question here therefore is whether the lifetime expulsion of Saad—what our, prior opinion in this case called the* “securities- industry equivalent of capital punishment,” Saad v. SEC, 718 F.3d 904, 906 (D.C. Cir. 2013)— was a permissible.and appropriate penalty under the relevant statutes and regulations. If FINRA and the SEC can still impose expulsions and suspensions in certain cases, why does the terminological distinction matter? In other words, why should we care that FINRA and the SEC must characterize certain sanctions as punitive rather than remedial? One answer is this: If FINRA and the SEC must justify ex-" puisions or suspensions as punitive (as I believe they must after Kokesh), they will have to explain why such penalties are appropriate, under the facts of each case. FINRA and the SEC will no longer be able to simply wave the “remedial card” and thereby evade meaningful judicial review of harsh sanctions they impose on specific defendants. Rather, FINRA and the SEC will have to reasonably explain in each individual case why an expulsion or suspension serves the purposes of punishment and is not excessive or oppressive. Over time, a fairer, more equitable, and less arbitrary system of FINRA and SEC sanctions should ensue. Cf. 18 U.S.C. § 3553(a).[2] With those observations, I join the Court’s decision to remand the case to the SEC for the Commission to address in the first instance whether, in light of Kokesh, the penalty imposed on Saad was excessive or oppressive. MILLETT, Circuit Judge, dubitante regarding Part II.B: I have grave doubts about the propriety of remanding this case to the Commission yet again. This time, the remand seeks the Commission’s views on the relevance—if there is any at all—of Kokesh v. SEC, — U.S. —, 137 S.Ct. 1635, 198 L.Ed.2d 86 (2017). But in my view, the Commission amply explained the remedial reasons for sustaining FINRA’s permanent bar on Saad’s affiliation with it and its members, and there is- nothing in Kokesh that helps Saad. That presumably is why Saad himself has not whispered a word to.this court about Kokesh having any bearing upon his case. Not one word. Accordingly, adding another, round to this already decade-long saga does not seem worth the candle. Nor does further delay seem fair to FINRA’s efforts to protect the integrity of the securities industry from securities brokers who exploit and abuse the trust of their employers and the investing public. . In my view, the Commission did exactly what our earlier decision flagged for remand: It addressed Saad’s mitigating evidence and quite reasonably concluded that FINRA’s permanent bar on Saad’s affiliation with its members is -remedial, rather than “excessive or oppressive,” 15 U.S.C. § 78s(e)(2). The Commission’s affirmance of FINRA’s decision about how best to deal with Saad’s pattern of serious professional misconduct echoes the Supreme Court’s recognition of “how essential it is that the highest ethical standards prevail in every facet of the securities industry.” SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 186-187, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963) (quotation omitted); see Kokesh, 137 S.Ct. at 1640 n.1. In addition, in imposing Saad’s bar, FINRA hewed to the remedy its Sanction Guidelines recommend, which we previously held FINRA could properly extend to this case. See Saad v. SEC, 718 F.3d 904, 911 (D.C. Cir. 2013) (upholding FIN-RA’s reliance on the Sanction Guideline for conversion or improper use because “misappropriation is doubtless analogous to conversion”) (internal quotation marks and citation omitted). That Sanction Guideline .reflects a deliberate and objective assessment of the type -of remedy needed to protect the securities industry and the investing public from misconduct involving mendacity and the misuse of entrusted property—misdeeds that strike at the heart of the investing public’s trust in the securities industry. FINRA’s evenhanded application of that prescribed remedy supports the sanction’s remedial character. As the Commission also explained, FIN-RA’s determination in this case to permanently bar Saad from registering with FINRA or affiliating with its members was tailored to the individual circumstances of his case and Saad’s serious and serial misconduct. In addition to two separate acts of misappropriating property entrusted to him—the fabricated Memphis trip and the abusive use of employer funds to purchase a cellphone for someone else— Saad forged documents, attempted to hide evidence of his misconduct' after it was discovered by the Atlanta administrator, and deliberately deceived and misled regulators for' more than -half a year as they investigated his misconduct. The Commission thus had an- adequate factual foundation to sustain FINRA’s..judgment that “Saad’s actions betray a dishonest character * * * [and] demonstrate that he cannot be entrusted with firm or customer money[.]” J.A. 115. In an industry the functioning of which is predicated on the public trust, “[character is as important a qualification as knowledge[.]” Hawker v. New York, 170 U.S. 189, 191, 18 S.Ct. 573, 42 L.Ed. 1002 (1898). For the same reason, the Commission reasonably concluded that Saad “would pose a continuing and unacceptable threat to investors and other industry participants if not barred.” J.A. 115; see Kokesh, 137 S.Ct. at 1640 n.l (emphasizing the need to “achiev[e] a high standard of business ethics in the securities industry”) (quoting Capital Gains Research Bureau, 375 U.S. at 186, 84 S.Ct. 275). Given all of that, Kokesh is of no help to Saad. Kokesh held only that “[djisgorgement” ordered by the Commission in “enforcement proceedings” prosecuted by the Commission itself to punish violations of “public law” “operates as a penalty under [28 U.S.C.] § 2462,” 137 S.Ct. at 1644, 1645. In multiple respects, that bears no resemblance to FINRA’s private decision in this case to disaffiliate from Saad because of his repeated violations of FIN-RA’s own professional rules of conduct. First, the two cases implicate quite different remedial schemes and materially different statutory standards. As noted, Kokesh interpreted the term “penalty” under 28 U.S.C. § 2462, which prescribes a five-year statute of limitations for the imposition of any “civil fine, penalty, or forfeiture, pecuniary or otherwise” in proceedings brought to enforce Acts of Congress. Commission review in this case, by contrast, does not involve a governmental entity enforcing an Act of Congress, federal regulation, or any other type of public law. Instead, in this case, the Commission is exercising discretionary superintendence over the decisions of a private self-regulatory organization (FINRA) to ensure only that its disciplinary decisions do not “impose[ ] any burden on competition not necessary or appropriate” and are not “excessive or oppressive.” 15 U.S.C. § 78s(e)(2). If they are, the Commission “may” alter them. Id. Those distinctions are critical. Kokesh is quite explicit that the defining feature of a “penalty” under 28 U.S.C. § 2462 is that it is “imposed as a sanction for violating federal securities law.” Kokesh, 137 S.Ct. at 1639 (emphasis added). Indeed, “violating a public law” is a “hallmark[] of a penalty.” Id. at 1644; see id. at 1643 (“SEC disgorgement is imposed by the courts as a consequence for violating what we described in Meeker [v. Lehigh Valley R Co., 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644 (1915) ] as public laws.”) (emphasis added); id. (“Sanctions imposed for the purpose of deterring infractions of public laws are inherently punitive[.]”) (emphasis added); id. at 1641 (“The Commission sought civil monetary penalties, disgorgement, and an injunction barring Kokesh from violating securities laws in the future.”) (emphasis added). By contrast, all that Saad is charged with violating—and all that is being reme-diated in this proceeding—is FINRA’s rules of professional conduct. See J.A. 109 (“FINRA instituted disciplinary proceedings ⅜ * * alleging [a] * * * violation of NASD Rule 2110.”) (emphasis added); J.A. 110 (“ ‘[Pjersonal problems’ could be mitigating if they ‘interfered with an ability to comply with FINRA rules[.J ”) (emphasis added). The Supreme Court has ruled time and again that such “occupational debarment” is a “nonpunitive” sanction. See Hudson v. United States, 522 U.S. 93, 104, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (order forbidding further participation in the banking industry is a nonpunitive sanction); see also De Veau v. Braisted, 363 U.S. 144, 156-160, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) (barring certain persons from work as union officials); Hawker, 170 U.S. at 194-200, 18 S.Ct. 573 (permitting the revocation of a medical license); see generally Smith v. Doe, 538 U.S. 84, 100, 123 S.Ct. 1140, 155 L.Ed.2dd 164 (2003).[1] This case is even easier than those Supreme Court cases. The question of whether debarments (or even suspensions, as the Concurring Opinion suggests) are “excessive or oppressive” is, at bottom, a pure question of statutory construction. And on that question, Congress has mandated that any securities-industry self-regulatory organization that wishes to register with the Commission include in its rules the ability to “discipline[ ]” members who violate “the rules.of the association” by, inter alia, “expulsion, suspension, * * * [and] being suspended or barred from being associated with a member.” 15 U.S.C. § 78o-3(b)(7); see id. § 78o-3(h)(3). Disciplinary tools required by Congress in Section 78o-3 cannot categorically be impermissibly “excessive or oppressive” under Section 78s(e)(2).[2] Second, Kokesh involved an order of disgorgement commanding the payment of funds into the United States Treasury. That sanction thus did nothing to protect or to compensate the victims of the crime. Kokesh, 137 S.Ct. at 1644 (“When an individual is made to pay a noncompensatory sanction to the Government as a consequence of a legal violation, the payment operates as a penalty.”) (emphasis added); id. (“SEC disgorgement thus bears all the hallmarks of a penalty: It is imposed as a consequence of violating a public law and it is intended to deter, not to compensate.”). By contrast, Saad’s offense harmed FINRA’s members not just by misappropriating his employer’s money, but also by imperiling, through both his fraud and his deceitful cover-up, the trust and confidence of the investing public that is the lifeblood of the securities industry. Saad’s seven-month-long obstruction of investigators also squandered FINRA’s and its members’ resources, forcing them to expend time, personnel, and money unravelling the truth from his falsehoods. Under these circumstances, allowing an industry to protect itself and its clients from Saad’s mendacity and purloining by disassociating from him is a remedial measure that protects the industry and its investors. See J.A. 115 (“Because we conclude that a bar is necessary to protect FINRA members, their customers, and other securities industry participants, we find that it is remedial, not punitive.”); see also id. (“[Saad’s actions] demonstrate that he cannot be entrusted with firm or customer money, and that therefore he would pose a continuing and unacceptable threat to investors and other industry participants if not barred.”). Saad’s discipline, unlike Kok-esh’s, does not surrender anything “to the Government.” 137 S.Ct. at 1644. The remedy here thus bears no punitive resemblance to the disgorgement order in Kok-esh. Third, given the significant differences in the two statutory schemes, Saad cannot wrap himself in Kokesh without first establishing that the meaning of “penalty” in 28 U.S.C. § 2462’s statute of limitations governing the enforcement of Acts of Congress'both .(i) directly dictates the meaning of “excessive or oppressive” under 15 U.S.C. § 78s(e)(2), and also (ii) overrides the Commission’s discretionary judgment whether to correct a FINRA disciplinary measure, thereby mandating relief in his case, of. id. (Commission “may” corréct orders); Saad, however, has never argued in any way at any point in these proceedings that we should, .extrapolate the meaning- of “penalty” under. 28 U.S.C. § 2462 to the determination of whether a sanction is “excessive or oppressive” under 15 U.S.C. § 78s(e)(2). Saad made no such argument before FINRA or the Commission. And before this court—giving Saad every benefit of the doubt—he at most indirectly bumped into the point by citing a case that arose under Section 2462—and even that appeared for the first time in his reply brief. Saad Reply Br. 2 (mentioning a case that involved a-proceeding under 28 U.S.C. § 2462, but not citing the statute or arguing its extension to this context); see 15, U.S.C. §. 78y(c)(l) (“No objection to an order or rule of the Commission, for which review is sought under this section, may.be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to 'do so.”); United States v. TDC Mgmt. Corp., 827 F.3d 1127, 1130 (D.C. Cir. 2016) (undeveloped. arguments are forfeited); American Wildlands v. Kempthorne, 530 F.3d 991, 1001 (D.C. Cir. 2008) (“We need not consider this argument because plaintiffs have forfeited it on appeal, having raised it for the first time in their reply brief.”). More to the point, Saad himself apparently sees no relevance to the Supreme Court’s decision in Kokesh because, in the five months since Kokesh was decided, he has not said a single word to this court about that decision or its potential applicability. Because Saad himself does not consider the decision worth mentioning and has never argued at any point that 28 U.S.C. § 2462’s definition of “penalty” controls this, very different statutory scheme enforcing a different statutory standard (“excessive or oppressive”), he has forfeited any reliance on that argument. Or so the Commission could sensibly conclude. Fourth, binding circuit precedent—indeed, law of the case—has established that the Commission “may approve ‘expulsion not as a penalty but as a means of protecting investors.’” Saad, 718 F.3d at 913 (quoting PAZ Securities, Inc. v. SEC, 494 F.3d 1059, 1065 (D.C. Cir. 2007)). See also Siegel v. SEC, 592 F.3d 147, 158 (D.C. Cir. 2010) (consecutive suspensions permissibly imposed “to protect customers”) (internal quotation marks, omitted); PAZ Securities, Inc. v. SEC, 566 F.3d 1172, 1175 (D.C. Cir. 2009) (debarment permissibly imposed “to protect investors” and to redress “a significant harm to the self-regulatory system”); McCurdy v. SEC, 396 F.3d 1258, 1265 (D.C. Cir. 2006), (suspension permissibly imposed “to protect the public from [the violator’s] demonstrated capacity for recklessness”). ■ This court is not alone in that judgment. See, e.g., ACAP Fin., Inc. v. SEC, 783 F.3d 763, 768 (10th Cir. 2015) (Gorsuch, J.) (suspension permissibly imposed where the violator’s conduct “cast doubt on his ability to carry out . his obligations as a securities professional in any capacity”). The Eighth Circuit, moreover, recently’ ruled that nothing in Kokesh called into’ question the authority of the Commission to sustain a disciplinary order enjoining the continued violation of the securities laws. That prospective order remained remedial because it was designed “to protect the public prospectively[.]” SEC v. Collyard, 861 F.3d 760, 764 (8th Cir. 2017) (discussing Kok-esh). Nothing in Kokesh unravels our on-point circuit precedent. Kokesh involved a different sanction (disgorgement), imposed under a different statute under an entirely different type of Commission proceeding, to enforce public law not industry professional standards, and involved markedly different remedial and protective implications for private industry and private investors. Accordingly, nothing in Kokesh. “effectively overrules” or “eviscerates” that binding precedent, which is what we require before abandoning law of the circuit. See National Inst. of Military Justice v. Department of Defense, 512 F.3d 677, 682-683 n.7 (D.C. Cir. 2008) (“[W]hether [a] Supreme Court opinion supersedes Circuit precedent * ⅛ * depends on whether [that] opinion ‘effectively overrules,’ i.e. ‘eviscerates’ precedent”) (quoting United States v. Williams, 194 F.3d 100, 105 (D.C. Cir. 1999)). Accordingly, under settled .authority,' the Commission’s affirmance of a FINRA debarment decision is not “excessive or oppressive” when it is designed, as it was here, to remedially protect the industry and the investing public. This panel, and any panel reviewing the Commission’s decision on remand, is bound by that precedent, and (absent an intervening en banc ruling) will continue to be bound by that precedent on review of any subsequent SEC decision. See LaShawn A. v. Barry, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc).[3] The foundational premise of the Concurring Opinion is that only disciplinary sanctions that “provide a remedy to the victim” can qualify as “remedial.” Concurring Op. 304; see id. at 305. But Kokesh does not go anywhere near that far. More to the point, it says nothing at all about what Constitutes a remedial sanction in the context of a self-regulatory organization’s enforcement of its professional standards, rather than public laws. This circuit has ruled that, in -this exact statutory context, a disciplinary sanction that is “purely remedial and preventative” but not compensatory-such as a general order to cease-and-desist violating, the securities laws—is “not a ‘penalty* or .‘forfeiture’ ’’ within the meaning of 28 U.S.C. § 2462. Riordan v. SEC, 627 F.3d 1230, 1234 (D.C. Cir. 2010); see id. at 1232 (labeling the cease-and-desist order “remedial”). A prospective cease- and-desist order of that general breadth “does not provide anything to the victims to make them whole or to remedy their losses,” as the Concurring Opinion would require. Concurring Op. 305. Yet it certainly is remedial to ensure that, going forward, a harm stops. , The Concurring Opinion says that debarment and even’ a one-day suspension have to be treated ás a penalties because, in its view, they do not “provide a remedy to the victim.” Concurring Op. 304. But that argument conflates “remedial” with “compensatory.” Victimization and harm entail more than just replacing lost dollars. There can be non-pecuniary harms too. There certainly were here. The harm that Saad inflicted and that FINRA remedied did not stop with his employer’s bank account. His conduct also sowed distrust in the industry, and his seven months of falsehoods and misrepresentations to regulatory investigators stole their time and scarce resources, while compounding the harms he caused to industry integrity. FINRA’s order of debarment directly remedied that full range of harms by making sure they stopped. Ordering the fox out of the henhouse falls comfortably within the “common understanding of the term ‘remedial,’” Concurring Op. 304, and indeed provides to Saad’s many victims a more comprehensive and realistic remedy than the Concurring Opinion’s dollars-only approach.[4] In sum, Saad’s repeated turpitudinous misconduct, his nearly year-long venture in misleading and lying to his employer and investigating regulators, and the paramount need for the utmost honesty and integrity in the handling of others’ property in the securities industry amply justified thé Commission’s decision to sustain FIN-RA’s imposition of debarment as a remedy in this case. I do not see anything in Kokesh that bears on that decision by a private self-regulatory organization to disaffiliate with someone who repeatedly transgressed industry rules that are necessary to protect the investing public and the integrity of the securities industry. For those reasons, I have deep doubts about the decision to remand this case to the Commission to address a case that is so off-point that Saad himself has paid it no heed, especially because the remedial sufficiency of the Commission’s order is controlled by circuit precedent. I have gone along only because nothing in our simple remand order says that Kokesh should alter the outcome of Saad’s case. . "In their review of disciplinary orders, the federal courts of appeals do not distinguish between SEC orders that affirm FINRA disciplinary sanctions and SEC orders that affirm sanctions imposed through the SEC's administrative hearing system; both are considered SEC orders. Accordingly, parties rarely raise the objection that FINRA is not a government body, and if the objection is raised, courts quickly dispense with it.” Barbara Black, Punishing Bad Brokers: Self-Regulation and FINRA Sanctions, 8 Brook. J. Corp., "Fin. & Comm. L. 23, 41-42 (2013). . Judge Millett's separate opinion suggests that the SEC on remand should not arid, indeed, may not change its approach to this issue in the wake of Kokesh. To state, the obvious, her separate opinion speaks for only one judge, as does my separate opinion. If a majority of the panel agreed with all of the sentiments expressed in. Judge Millett's separate opinion, we presumably would not be remanding the case. If a majority of the panel agreed with all" of the sentiments expressed in my separate opinion, we presumably would be remanding the case with specific directions about Kokesh. Instead, the Court is remanding for the SEC, in the first instance, to address the relevance of Kokesh. The Kok-esh issue remains undecided for now in this Court. . The Concurring Opinion dismisses the Supreme Court's debarment cases by suggesting that such discipline is, as a matter of law, a civil "penalty,” and thus automatically "excessive or oppressive.” Concurring Op. 306. But in upholding those measures, the Supreme Court recognized the important remedial role that such debarments can play in protecting the integrity of an industry and those members of the public who interact with it. See Hudson, 522 U.S. at 105, 118 S.Ct. 488 (holding that ancillary deterrence effects are not dispositive when a sanction’s main purpose is "to promote the stability of the banking industry”); Hawker, 170 U.S. at 192, 18 S.Ct. 573 (upholding character requirements for medical licensing because of the "most intimate” relationship between the medical profession and the “life and health” of the general public). . Section 78o-3 does not mention disgorgement. . The Concurring Opinion says that Kokesh overturns circuit precedent characterizing "expulsion[s] or suspension[s]” as remedial. Concurring Op. 304. But the Concurring Opinion cites no language in Kokesh that even suggests such a sweeping holding, let alone that clearly "eviscerates” our precedent. Nor does the Concurring Opinion grapple with our strict circuit standard for relying upon intervening Supreme Court precedent to abandon circuit precedent. . The Concurring Opinion’s suggestion that FINRA "may” somehow be able to impose "civil penalties]” is quite puzzling. Concurring Op. 305. Civil penalties punish violations of federal law, not private industry rules. See, e.g., Kokesh, 137 S.Ct. at 1639, 1644. And nothing in the relevant federal securities laws empowers a non-governmental body like FIN-RA to prosecute and punish violations of federal law directly. Nor does federal law provide any avenue by which the Commission "may” be able to review FINRA’s prosecution of civil penalties. Concurring Op. 305. More puzzling still is the Concurring Opinion's suggestion that FINRA was supposed to justify Saad's debarment as "punitive.” Concurring Op. 306-07. This court remanded this case to the Commission to explain why its disciplinary measures were not "punitive.” Saad, 718 F.3d at 913. Thankfully, law of the case and law of the circuit foreclose the Concurring Opinion's volte-face.